```
IN THE UNITED STATES DISTRICT COURT FOR THE
         SOUTHERN DISTRICT OF GEORGIA
                AUGUSTA DIVISION
```

NEW HAMPSHIRE INSURANCE COMPANY,

    Plaintiff,

v.

THE CITY OF THOMSON and CITY OF THOMSON GAS DEPARTMENT,

    Defendants.

1:15-cv-154

# O R D E R

Presently pending before the Court is Plaintiff's motion for judgment on the pleadings on its claim for contract reformation and Defendants' cross-motion for partial judgment on the pleadings on their counterclaim for breach of contract. For the reasons discussed below, the Court **DENIES** both motions.

## I. BACKGROUND

This case concerns commercial umbrella liability insurance issued by Plaintiff New Hampshire Insurance Company ("New Hampshire") to Defendants City of Thomson and City of Thomson Gas Department (collectively, "the City") covering January 2009 through January 2016. (Petition for Reformation of Contract, Doc. 1 ¶ 1; Answer, Doc. 7 ¶ 1.) This insurance-coverage dispute arose because the City is a defendant in six state-court

tort actions and the plaintiffs in those actions demanded the insurance provided for in the 2013-2014 Umbrella Policy (Compl. ¶ 16; Answer ¶ 16; "Umbrella Policy," Doc. 1, Ex. C.).[1] The City also requested indemnification and legal defense from New Hampshire. (Compl. ¶ 18; Answer ¶ 18.) Soon after the City's request, New Hampshire filed this case seeking reformation of all seven umbrella policies issued between 2009 and 2016.

Although New Hampshire's petition seeks reformation of all seven umbrella policies, the Complaint only addresses the City's renewal application for 2013-2014 umbrella coverage in detail. Before January 4, 2013, the City completed an application for "primary and excess insurance for its operation of a natural gas distribution system . . . ." (Compl. ¶¶ 5,9; Answer, ¶¶ 5, 9; Application, Doc. 1, Ex. A.) In its application, the City identified the insured business as "a natural gas utility owned by [the City], selling gas to residential, commercial and industrial customers" and requested quotes for general liability and umbrella coverage. (Compl. ¶ 10; Answer ¶ 10; Application, Doc. 1, Ex. A. at 2, 10.)

---

[1] "Because Rule 10(c) incorporates into the pleadings all exhibits attached thereto and materials referred to, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed.).

2

In response to the City's application, Illinois National Insurance Company issued a commercial general liability policy (the "Primary Policy") to the City. (Compl. ¶ 11; Answer ¶ 11; Primary Policy, Doc. 1, Ex. B.) The Primary Policy was effective from January 4, 2013, through January 4, 2014, had limits of $1 million per occurrence and $2 million in aggregate, and contained "an express provision limiting the coverage of the policy to the premises and operations incidental and necessary to natural gas distribution." (Compl. ¶¶ 11-12; Answer ¶¶ 11-12; see Primary Policy at 3.)

As for umbrella coverage, after receiving the City's renewal application, New Hampshire issued a commercial umbrella liability policy (the "Umbrella Policy") effective from January 4, 2013, through January 4, 2014. (Compl. ¶ 13; Answer ¶ 13; Umbrella Policy, Doc. 1, Ex. C.) The Umbrella Policy contains limits of $4 million per occurrence and in aggregate. (Compl. ¶ 13; Answer ¶ 13; Umbrella Policy, Doc. 1, Ex. C. at 2.) Unlike the Primary Policy, the Umbrella Policy does not limit coverage to occurrences "arising out of the ownership, maintenance or use of premises and operations incidental and necessary to natural gas distribution." (Compl. ¶ 14; Answer ¶ 14.)

New Hampshire filed its "Petition for Reformation of Contract" in this Court on September 21, 2015, and the City answered and counterclaimed on November 9, 2015. New

3

Hamprshire's petition seeks to reform the insurance policies to add language limiting coverage to the same circumstances as the Primary Policies. In its counterclaim, the City seeks damages and other suitable relief for New Hampshire's alleged breach of the duty to indemnify the City under the Umbrella Policy. (Answer, Part III, ¶ 13.)

On January 5, 2016, New Hampshire moved for judgment on the pleadings. (Doc. 15.) Soon after, the City cross-moved for partial judgment on the pleadings on its counterclaim for breach of the Umbrella Policy. (Doc. 16.) Both motions are now ripe adjudication.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1255 (11th Cir. 2010).

## III. DISCUSSION

### A. New Hampshire's Motion for Judgment on the Pleadings

New Hampshire seeks equitable reformation of the Umbrella Policy on the grounds of mutual mistake. In Georgia, "[a]

4

mistake, either of law or fact, is cognizable in equity and affords a remedy therein by reformation of the instrument so as to make it express the true intention of the parties, on a proper cause being made . . . ." Brannen v. Gulf Life Ins. Co., 410 S.E.2d 763, 764 (Ga. Ct. App. 1991). "A mistake relievable in equity is some unintentional act or omission or error, arising from ignorance, surprise, imposition, or misplaced confidence." O.C.G.A. § 23-2-21(a). To be relievable by reformation, the mistake "must be mutual, or else mistake on the part of one to the contract and fraud on the part of the other." Brannen, 410 S.E.2d at 764. "The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction." Bank of Am. v. Cuneo, 770 S.E.2d 48, 53 (Ga. Ct. App. 2015) (quotation omitted). Parties may introduce parol evidence as well as other contemporaneous documents and the subsequent conduct of the parties to prove the parties' mutual intent. First Chatham Bank v. Liberty Capital, LLC, 755 S.E.2d 219, 223-24 (Ga. Ct. App. 2014) (citation omitted).

"However, the power to relieve mistakes [must] be exercised with caution, and the evidence of the mistake must be clear, unequivocal, and decisive." Id. at 224 (quotation omitted); see O.C.G.A. § 23-2-21(c) ("The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake."). "Thus,

the burden on the party attempting to prove mutual mistake is a heavy one." Id. (quotation omitted).

Plaintiff maintains that "it was intended for the umbrella policies to state that the policies followed the same terms, definitions, conditions and exclusions of the general liability policies, and that the coverage would be no broader than the general liability policies." (Compl. ¶ 2.) Unsurprisingly, the City denies that it shared New Hampshire's intent. (Answer ¶ 2.) "Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties." Frame v. Hunter, Maclean, Exley & Dunn, P.C., 511 S.E.2d 585, 586 (Ga. Ct. App. 1999). Because the present motion is for judgment on the pleadings, the Court must find no mutual mistake existed because the City denies sharing New Hampshire's intent to limit coverage.

Besides its denial, the City's only manifestation of intent is contained in the renewal application. As mentioned above, the renewal application specifies that the insured business is a natural gas utility. (Application, Doc. 1, Ex. A. at 10.) But nothing inherent in including a business description suggests the City only sought umbrella coverage "incidental and necessary to natural gas distribution." Further, the application says nothing about limiting the Umbrella Policy to the exact terms of the Primary Policy.

6

Most importantly, at least on the City's Application for the 2013-14 Umbrella Policy, the Application states in the "remarks" field that "[t]his application is for the renewal of Umbrella Policy # XX=XX=XXXXXX with New Hampshire Insurance Co." (Application at 20.) If anything, the City's application indicates its intention to follow the same terms as the 2012-13 Umbrella Policy, which New Hampshire admits did not contain any limiting language. (Compl. ¶ 20.) Accordingly, in the light most favorable to the non-moving party, the pleadings and attached documents indicate that the City possessed a different intent than New Hampshire, and the mistake was unilateral on New Hampshire's part.

Finally, the Court notes the absence of detailed allegations and documentation addressing the other six umbrella policies that New Hampshire seeks to reform. As the above shows, the original and renewal applications may contain relevant evidence of the parties' intent. Although the 2013-14 Umbrella Policy is understandably of greater concern to New Hampshire, the Court will not exercise its equitable authority to reform the other six insurance policies absent more evidence of the parties' intent. See O.C.G.A. § 23-2-21(c) ("The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake.").

In summary, whether any mistake occurred is a question of fact that requires evidence of the parties' intent at the time of the agreement. Because the Court cannot, as a matter of law, find that the alleged mistake was mutual, the Court **DENIES** New Hampshire's motion for judgment on the pleadings. The briefing for this motion addressed other arguments, including whether the issued policy constituted a counteroffer, whether New Hampshire's negligence caused the mistake, and whether "umbrella" coverage signals a different intent than "excess" in insurance policies. The Court takes no position on those arguments, and the parties are free to raise them at summary judgment.

**B. The City's Cross-motion for Judgment on the Pleadings**

In its motion for partial judgment on the pleadings, the City argues that judgment is proper on the issue of breach of contract while the question of damages will remain.

The Court finds, however, that the mistake issue precludes granting partial judgment on the pleadings in the City's favor. By implication, New Hampshire has indicated its intent to assert mistake as a defense to the City's breach-of-contract claim. See O.C.G.A. § 13-5-3 ("If the consideration upon which a contract is based was given as a result of a mutual mistake of fact or of law, the contract cannot be enforced.") As discussed above, mistake is a fact-intensive inquiry into the parties'

8

intent when they entered into the seven umbrella policies. The City's intent when renewing the 2013-14 umbrella policy is just as disputed on the City's counterclaim as it is for New Hampshire's claim for equitable reformation. Accordingly, the Court **DENIES** the City's motion for partial judgment on the pleadings.

## IV. CONCLUSION

As discussed above, the Court **DENIES** New Hampshire's motion for judgment on the pleadings (Doc. 15) and the City's cross-motion for partial judgment on the pleadings (Doc. 16). Additionally, the Court **LIFTS** the discovery stay (Doc. 22) and **DIRECTS** the parties to file an updated Rule 26(f) report within two weeks from this Order.

**ORDER ENTERED** at Augusta, Georgia, this 19th day of July, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA